**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

TCHANAVIAN J. CANTRELL,

Petitioner, : Case No. 3:26-cv-00081

\- vs - District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

SHANNON OLDS, WARDEN,
Dayton Correctional Institution,

:

Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case was brought *pro se* by Petitioner Tchanavian Cantrell pursuant to 28 U.S.C. § 2254 to obtain relief from her conviction in the Greene County Court of Common Pleas on four counts of child endangering and consequent imprisonment in Respondent's custody (Petition, ECF No. 1, PageID 2). The case is ripe for decision on the Petition, the State Court Record (ECF No. 10), the Return of Writ (ECF No. 11), and Petitioner's Reply (ECF No. 15)[1].

The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (Transfer Order, ECF No. 12).

[1] Petitioner's Reply was due to be filed not later than September 17, 2026 (ECF No. 14), but was not postmarked until September 23, 2026 (PageID 2027). In the two places where the document purports to have been signed on September 16, 2026, that date appears to have been pasted on the document over some other date (See PageID 2003, 2025). Petitioner has not anywhere provided the declaration of mailing required for her to receive the benefit of the mailbox rule. For the sake of completeness, however, the Magistrate Judge has considered the Reply.

**Litigation History**

On December 17, 2021, the Greene County Grand Jury returned an indictment charging Petitioner with four counts of endangering children under Ohio Revised Code § 2919.22(B)(1), (B)(3)(two counts), and § 2919.22(A)(Indictment, State Court Record, ECF No. 10, Ex. 1). A trial jury convicted Petitioner on one count, but was unable to agree on verdicts for the other three counts; on re-trial she was convicted of the remaining counts. At sentencing the trial court merged all counts and imposed a sentence of an indefinite minimum prison term of eight years with a maximum prison term of twelve years. (Sentencing Entry, State Court Record, ECF No. 10, Ex. 18).

Petitioner appealed to the Ohio Second District Court of Appeals which affirmed the conviction. *State v. Cantrell*, 2024-Ohio-5406 (Ohio App. 2nd Dist. Nov. 15, 2024). Proceeding *pro se*, Petitioner appealed further to the Ohio Supreme Court, but that court declined to exercise jurisdiction. *State v. Cantrell,* 177 Ohio St.3d 1455 (2025).

Cantrell then filed her habeas corpus Petition in this Court, pleading the following grounds for relief:

> **GROUND ONE:** The trial court violated Petitioner's Due Process in denying Appellant's request for a continuance of the jury trial.
>
> **GROUND TWO:** Appellant's conviction was not supported by sufficient evidence, as defendant's testimony negating an element of the offense was not disproved by the prosecution.
>
> **GROUND THREE:** Conviction was against the manifest weight of the evidence.

ECF No. 1, PageID 5.

Respondent concedes that Petitioner has exhausted all available state court remedies and defends on the merits, asserting Ground Three is not cognizable in habeas corpus.

## Analysis

**Ground One: Denial of a Trial Continuance**

In her First Ground for Relief, Petitioner asserts she was denied due process of law when the trial judge denied a trial continuance. She presented a claim about denial of the continuance to the Second District Court of Appeals as her first Assignment of Error, but she presented it as an abuse of discretion claim, rather than denial of a constitutional right. Second District decided that claim as follows:

> {¶ 21} Cantrell contends that the trial court abused its discretion by denying her request for a continuance of the jury trial. Cantrell asserts that the length of delay requested was until she was out of the hospital and that no other continuance of the trial had been requested or granted. She also argues that the State, witnesses, co-defendants, and the court would not have suffered any inconvenience. She contends that her requested delay was for legitimate reasons, not dilatory, purposeful, or contrived reasons, and thus the court's denial of her motion was unreasonable, arbitrary, and unconscionable. We disagree.
>
> {¶ 22} In evaluating a motion for a continuance, a court should consider several factors, including "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether

> the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *State v. Unger*, 67 Ohio St. 2d 65, 67-68 (1981), citing *United States v. Burton*, 584 F.2d 485 (1978); *Giacalone v. Lucas*, 445 F.2d 1238 (1971).
>
> {¶ 23} A decision to grant or deny a motion for continuance is a matter left to the sound discretion of the trial court. *State v. Unger*, 67 Ohio St. 2d 65, 67 (1981). We will not reverse the denial of a continuance absent an abuse of discretion. *Id.* " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).
>
> {¶ 24} In this case, we cannot say that Cantrell's request for continuance was dilatory, purposeful, or contrived, as she was apparently hospitalized at the time. However, Cantrell not specify the length of the delay requested, and other continuances had already been granted in this matter. In fact, the trial court had previously advised Cantrell in its April 5 entry that no additional continuances would be granted for the final pretrial conference or the jury trial. Moreover, any further delay would have inconvenienced litigants, witnesses, and opposing counsel, as several witnesses had been subpoenaed to testify.
>
> {¶ 25} The incident in question occurred in October 2021, and Cantrell was indicted shortly thereafter. The original trial was continued from July 2022 to February 2023. The second trial was scheduled in August 2023, nearly two years after the events that gave rise to the charges against Cantrell. Under these circumstances, we cannot say that the trial court abused its discretion in denying Cantrell's additional motion for a continuance. Thus, Cantrell's first assignment of error is overruled.

*State v. Cantrell, supra*.

Petitioner attempted to convert this to a constitutional claim in her appeal to the Ohio Supreme Court (See Memorandum in Support of Jurisdiction, State Court Record. ECF No. 10, Ex. 24, PageID 217), but the Supreme Court declined jurisdiction.

It could be argued that Petitioner's due process continuance claim was not fairly presented

to the Ohio courts because an abuse of discretion does not violate the Constitution. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). However, the Sixth Circuit has held a claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis;
> (2) relied upon state cases employing federal constitutional analysis;
> (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or
> (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017). Although the First Assignment of Error was not phrased in due process terms, counsel did cite federal authority [*Bennett* v. *Scroggy,* 793 F.2d 772 (6th Cir. 1986); *United States* v. *Crossley,* 224 F.3d 847 (6th Cir. 2000)] and state authority applying the federal Constitution to this question [*State* v. *Henry,* 2002-Ohio-391 (Ohio App. 2d Dist. Feb. 1, 2002)](Appellant's Brief, State Court Record, ECF No. 10, Ex. 20, PageID 149), thereby satisfying the *Hand v. Houk* criteria.

In any event, exhaustion is not a jurisdictional requirement and Respondent has waived any fair presentation defense, writing "It appears that Cantrell's grounds for habeas relief have been fairly presented to the Ohio courts and are properly exhausted." (Return of Writ, ECF No. 11, PageID 1983).

Although the constitutional question was presented to the Second District, Judge Huffman's opinion for that Court does not discuss the Constitution and the Ohio Supreme Court declined jurisdiction. Accordingly there is no state court decision on the merits of the constitutional question presented in Ground One which would be entitled to deference under 28 U.S.C. § 2254(d)(1) and this Court must decide the constitutional question *de novo*.

The Motion for Continuance which was denied was for the second trial, the trial on the counts on which the first jury could not reach a verdict. Trial was set for Monday, August 21, 2023, and the motion was filed Friday, August 18, 2023, at 3:55 p.m., five minutes before the court closed for the weekend[2] (State Court Record, ECF No. 10, Ex. 15). Counsel makes various assertions about Petitioner's medical conditions, but the attached documentation shows no diagnosis or prognosis. The Motion does not ask for a particular length of continuance.

Judge Tornichio denied the Motion summarily one minute after it was filed (Entry, State Court Record, ECF No. 10, Ex. 16). The trial proceeded the following Monday as scheduled. In overruling the abuse of discretion assignment of error, the Second District made several findings of fact which are relevant: the trial was almost two years after the events in suit; other continuances had been granted; the trial court had warned in April, 2023, that there would be no further continuances; and witnesses had been subpoenaed to appear. *State v. Cantrell, supra*, at ¶¶ 24-25. Petitioner had apparently been discharged from the hospital as there is no indication she left against medical advice. Although she may have been uncomfortable, she was able to be present and to testify.

Petitioner cites no federal case authority for the proposition that denial of a continuance in circumstances parallel to those in this case violates due process. In *Bennett v. Scroggy,* 793 F.2d 722 (6th Cir. 1986), the continuance was found necessary to protect the defendant's right to present witnesses in his behalf, in that case a witness to the propensity for violence of the victim. There is no indication here that the denial of a continuance prevented the presentation of any witness. In *United States v. Crossley*, 224 F.3d 847 (6th Cir. Aug. 30, 2000), the court essentially found that defendant's claim of insufficient time to prepare for trial was too conclusory. No such claim is

---

[2] The closing time for the Greene County Common Pleas Court is 4:00 p.m. https://www.greenecountyohio.gov/402/common-plea-court. Visited September 18, 2026.

made here. Instead, for due process authority Petitioner relies on the justly revered opinion of Justice Felix Frankfurther in *Rochin v. California,* 342 U.S. 165 (1952)[3]. There the Court found that pumping the stomach without a search warrant of a suspect who had just swallowed contraband drugs "shocked the conscience" of the Court and therefore offended due process. *Rochin* was not about the denial of a continuance. Although the Second District did not decide Petitioner's constitutional continuance claim on the merits, the factual findings made by that Court remain binding in this proceeding. 28 U.S.C. § 2254(e).

Petitioner has not shown that denial of the continuance deprived her of any specific constitutional trial right. She did not present to the trial court any documentation from doctors that she was unable to participate in the trial and she did in fact testify. In fact, her Second Ground for Relief relies on what she claims was her unrebutted testimony at trial. Therefore the First Ground for Relief is without merit and should be dismissed.

**Ground Two: Insufficiency of the Evidence**

In her Second Ground for Relief, Petitioner asserts she was convicted on insufficient evidence. In particular she asserts the State produced insufficient evidence to disprove her testimony negating an element of the offense. As noted above, Respondent defends this ground for relief on the merits.

[3] Petitioner's citation of *Rochin* appears in what she has attached as a memorandum in support of her Petition. As quoted, the language suggests that it was a gunshot through the neck that was involved in that case. The quoted language does not appear in *Rochin,* but rather in *State v. Henry*, 2002-Ohio-391 at *6 (Ohio App. 2d Dist Feb. 1, 2002). While the undersigned has the greatest respect for Judge James Brogan who wrote the opinion in *Henry*, he is not and never has been Felix Frankfurther. This misattribution probably shows one of the dangers of using artificial intelligence to prepare a brief. While Petitioner does not identify the source of this language in the Petition, it appears to have been copies verbatim from her Memorandum in Support of Jurisdiction in the Ohio Supreme Court. Compare PageID 12 with PageID 220. The misattribution is repeated in the Reply.

Petitioner presented this claim as her second assignment of error on direct appeal. The Second District decided it, together with the manifest weight assignment, as follows:

> {¶ 27} In her second assignment of error, Cantrell contends that her conviction was not supported by sufficient evidence demonstrating her "recklessness" and S.M.'s "serious physical harm." Based on Cantrell's version of events, she argues there was insufficient evidence that she was aware that S.M. would push away, run outside, and fall on the concrete steps and gravel driveway, injuring her backside. Alternatively, Cantrell contends that, even if the jury believed S.M.'s version of events, her culpability was limited to that of negligence, as she merely should have been aware that Stepfather would command the other women to beat S.M. and she only failed to exercise due care. She also argues that S.M. did not suffer any physical harm that carried a substantial risk of death. According to Cantrell, S.M.'s back wounds were superficial, and there was no evidence of broken bones or injury to organs, no need to treat the wounds, no signs of infection, no tests or medications ordered, and no long-term scarring. Additionally, she contends that S.M.'s description of her pain did not rise to the level of pain contemplated by the statute to constitute "serious physical harm."
>
> {¶ 28} In her third assignment of error, Cantrell argues that her conviction was against the manifest weight of the evidence. First, she contends that S.M.'s version of events—namely that she was struck a hundred or more times with a metal-studded belt but only suffered superficial injuries—was not believable. She argues that S.M.'s history of deceitfulness made her credibility questionable and that Major Prall's body cam video from his encounter with S.M. in the woods captured S.M.'s verbalization of her desire to be with her biological father. She also contends that the testimonial evidence of the witnesses at trial was inconsistent. For example, Cantrell testified that she had spanked S.M. with a belt and then S.M. was injured during a scuffle in the gravel driveway; Tammara testified that she was not involved with S.M.'s beating in any way and did not have personal knowledge regarding anyone else's role. Marquette, who agreed to testify as part of an agreement to earn leniency with the State, stated that she, Stepfather, and Tammara had been present during S.M.'s beating but Cantrell had not.
>
> {¶ 29} A sufficiency of the evidence argument relates to a dispute concerning whether the State "presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380 (1997). The

test for sufficiency of the evidence was set forth in *State v. Jenks*, 61 Ohio St.3d 259 (1991):

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus. In other words, on review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Thompkins* at 390.

{¶ 30} A weight of the evidence argument, on the other hand, challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *Wilson* at ¶ 12, citing *State v. Hufnagel*, 1996 WL 501470, *3 (2d Dist. Sept. 6, 1996). The proper test to apply to a manifest weight of the evidence inquiry is set forth in *State v. Martin*, 20 Ohio App.3d 172, 175 (1983), which states:

> ... [T]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered....
>
> "In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a guilty verdict is 'against,' that is, contrary to, the manifest weight of the evidence presented." (Citation omitted.) *Wilson* at ¶ 14.

{¶ 31} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. Flores-Lopez*, 2017-Ohio-690, ¶ 49 (2d Dist.),

citing *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.); *accord State v. Robinson*, 2015-Ohio-1167, ¶ 17 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Flores-Lopez* at ¶ 49, citing *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.).

{¶ 32} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact primarily to resolve. *Wilson* at ¶ 15, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967). In *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997), we explained:

> Because the factfinder ... has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

{¶ 33} Additionally, the trier of fact is in the best position to consider inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *State v. Petty*, 2012-Ohio-2989, ¶ 38 (10th Dist.), citing *State v. Williams*, 2002-Ohio-4503, ¶ 58 (10th Dist.). "To that end, the fact finder is free to believe all, part or none of the testimony of each witness appearing before it." *Id.*, citing *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.). "Mere disagreement over the credibility of witnesses is not sufficient reason to reverse a judgment." *Id.*, citing *State v. Wilson*, 2007-Ohio-2202, ¶ 24. Moreover, "[i]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *In re M.J.C.*, 2015-Ohio-820, ¶ 35 (12th Dist.). Thus, we will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *See Wilson* at ¶ 17, citing *State v. Bradley,* 1997 WL 691510, *4 (2d Dist. Oct. 24, 1997).

{¶ 34} R.C. Chapter 2919 governs offenses against the family, and R.C. 2919.22 specifically relates to the endangering of children. R.C. 2919.22(A) states:

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or disability of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

"Substantial risk" means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 35} R.C. 2919.22(B)(1) and (3) states:

> No person shall do any of the following to a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age:
> (1) Abuse the child;
> (3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;
> "Abuse" includes acts of the child's parents causing "physical or mental injury that harms or threatens to harm the child's health or welfare." R.C. 2151.031(E). "Serious physical harm to persons" includes:
> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
> (b) Any physical harm that carries a substantial risk of death;
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶ 36} "The degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.' " *State v. Bootes*, 2011-Ohio-874, ¶ 19 (2d Dist.), quoting *State v. Irwin,* 2007-Ohio-4996, ¶ 37 (7th Dist.). "Under certain circumstances, a bruise can constitute serious physical harm because a bruise may satisfy the statutory requirement for temporary serious disfigurement." *Id*., citing *State v. Worrell,* 2005-Ohio-1521, ¶ 47-51 (10th Dist.), *reversed on other grounds by In re Criminal Sentencing Statutes Cases*, 2006-Ohio-2109.

{¶ 37} A parent may use physical punishment as a method of discipline so long as the discipline "is proper and reasonable under the circumstances." *State v. Thompson*, 2006-Ohio-582, ¶ 29 (2d Dist.), citing *State v. Adaranijo,* 2003-Ohio-3822 (1st Dist.). "Proper" and "reasonable" have been defined as "suitable or appropriate" and "not extreme or excessive." *Id*., quoting *State v. Hicks*, 88 Ohio App.3d 515 (10th Dist. 1993). "Of course, the nature of any physical injury inflicted or attempted to be inflicted may be evidence demonstrating that the actor's conduct was not proper and reasonable parental discipline." *Id*., citing *State v. Hause*, 1999 WL 959184 (2d Dist. Aug. 6, 1999).

{¶ 38} "Whether corporal punishment or physical discipline is excessive is determined in light of the totality of the circumstances." *In re J.L.*, 2008-Ohio-1488, ¶ 35 (3d Dist.), citing *State v. Hart*, 110 Ohio App.3d 250, 255-256 (1996). "In analyzing the totality of the circumstances, a court looks at several factors, including (1) the child's age, (2) the behavior being disciplined, (3) the child's response to correction, (4) the location and severity of the punishment, and (5) the parent's state of mind while administering the punishment." *Id.*; *State v. Jones*, 140 Ohio App.3d 422, 430 (8th Dist. 2000).

{¶ 39} The State must prove recklessness on the part of a defendant as defined in R.C. 2901.22(C) in order for the defendant to be found guilty of violating R.C. 2919.22. *See State v. Adams*, 62 Ohio St.2d 151, 153 (1980). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial

and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 40} In the case before us, Cantrell does not dispute that she administered physical discipline to S.M,; rather, she asserts that she did not do so recklessly and that S.M. did not suffer serious physical harm. The witnesses presented differing accounts of what happened, and **this is a case in which the members of the jury were forced to choose between conflicting sets of testimony**. "We will not disturb the choice made by the trier of the facts between witnesses and conflicting testimony unless it is so incredible that it defies belief ..." *State v. Morgan*, 2002-Ohio-3567, ¶ 8 (2d Dist.).

{¶ 41} At trial, S.M. testified that Tammara had been dissatisfied with S.M.'s method of doing the dishes, so she phoned Stepfather to complain about S.M.'s unsatisfactory performance. S.M. was ordered to stand in the corner for an unknown period of time until Cantrell and Stepfather returned to the house. S.M. was then told to grab a chair, move it to the middle of the room, sit on it, take off her shirt and pants, and put her hands on the pool table in anticipation of a "beating." S.M. testified that each of the four adults living at her house, including her mother, took turns lashing her with a metal-studded belt. She estimated that she was lashed 100 or 200 times over several "rounds." She described the force of the blows as a 7 or 8 out of 10, and her pain as a 10 out of 10. She stated that her back was bleeding, and Stepfather directed one of the women to spray rubbing alcohol on her wounds, causing them to burn. Stepfather then ordered her to do a wall squat for 30 minutes. She was unable to sleep comfortably and without pain that night.

{¶ 42} Others testified that they had observed the wounds on S.M.'s back. Dr. Wadia determined that S.M. had linear abrasions and bruising on her back and buttocks. Dr. Liker recommended counseling for S.M. because of her suicidal ideation and nightmares. Both physicians testified that the appearance of S.M.'s wounds was consistent with being beaten with a belt, and Dr. Liker noted that there were areas on S.M.'s back that could have lasting scarring.

{¶ 43} While Cantrell testified that she had spanked S.M. using a belt with no more than 10 lashings and that the marks on S.M.'s backside had occurred when she fell on the concrete steps and gravel driveway, the jury found other witnesses' testimony to be more credible. The jury could have reasonably concluded that Cantrell acted recklessly when she struck S.M. multiple times with a metal-studded belt and that her actions were executed with heedless indifference to the consequences of causing S.M. to suffer acute pain

> and a prolonged injury requiring medical attention. The jury could have reasonably concluded that, by beating S.M. with the metal-studded belt, Cantrell had disregarded a substantial and unjustifiable risk, and that Cantrell's conduct, apparently provoked by S.M.'s failure to adequately wash the dishes, was unreasonable under the circumstances. The blows to S.M.'s backside with the metal-studded belt created a risk of serious physical harm and substantial pain, having a residual effect of requiring medical care.
>
> {¶ 44} We give due deference to the jury's determination of the credibility of the evidence and the weight to be given to the testimony of each witness, and we will not substitute our judgment for that of the jury on the issue of witness credibility. The jury had the opportunity to view the witnesses' testimony and judge their credibility. The jury could have reasonably concluded that S.M.'s testimony was credible.
>
> {¶ 45} The record does not support a conclusion that the jury lost its way at arriving at its verdict and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. After examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that Cantrell's conviction for endangering children was not against the manifest weight of the evidence.
>
> {¶ 46} Finally, our determination that Cantrell's conviction was supported by the weight of the evidence is dispositive of the issue of sufficiency. However, we also conclude that the evidence presented, when viewed in a light most favorable to the State, was sufficient to demonstrate that Cantrell had acted recklessly in administering physical discipline to S.M. by lashing her multiple times with a metal-studded belt and that such physical discipline was excessive considering the totality of the circumstances. This was enough to support the jury's determination that the elements of endangering children had been proven beyond a reasonable doubt.
>
> {¶ 47} Cantrell's second and third assignments of error are overruled.

*State v. Cantrell, supra.* (emphasis supplied).

Thus the Second District did decide Petitioner's sufficiency of the evidence claim on the merits. The question for this Court under 28 U.S.C. § 2254(d)(1) is whether that decision was an objectively reasonable application of controlling Supreme Court precedent. The leading precedent

in point is *Jackson v. Virginia*, 443 U.S. 307 (1979), where the Supreme Court held

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold

> the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Petitioner does not claim the jury was improperly instructed on either of these two

elements. It was therefore for the jury to decide how much physical harm had been caused and whether or not that was enough to satisfy the serious physical harm element. Petitioner does not cite case authority holding that the amount of physical harm testified to by the victim and corroborated by medical personnel is not enough to satisfy the statute.

As to recklessness, the mental element required for conviction, the jury's task was somewhat different. It had to weigh the circumstances to decide whether it could properly infer, beyond a reasonable doubt from those circumstances that Petitioner had acted recklessly. As Judge Huffman's opinion for the Second District noted, "[T]his is a case in which the members of the jury were forced to choose between conflicting sets of testimony." *State v. Cantrell, supra,* at ¶ 40. But this is not a case in which if the jury chose to believe the State's witnesses, as it did, not enough had been presented to support a verdict.

The Reply contains a number of typewritten pages under the caption "Assignment of Error" which appear to be copies to pages submitted elsewhere (PageID 2004-2013). These are followed by handwritten pages (PageID 2014-19) making a different kind of argument. Here Petitioner argues that while she admits the conduct charged against her, she says it is not the cause of the injury to the victim which was instead caused by her falling after running away. Here again the jury had to choose which witness to believe and it believed the victim.

With respect to Ground Two, the Second District's decision is not an unreasonable application of *Jackson* and it is therefore entitled to deference. Ground Two should be dismissed with prejudice.

**Ground Three: Verdict Against the Manifest Weight of the Evidence**

In her Third Ground for Relief, Petitioner asserts the verdict is against the manifest weight

of the evidence.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

The Sixth Circuit has held a weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). Therefore Petitioner's Third Ground for Relief should be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

Although Petitioner argues her weight of the evidence claim in her Reply (PageID 2020-24), she presents no authority to the effect that this claim is cognizable in habeas corpus, i.e. that it is a constitutional claim.

At the very end of her Reply, Petitioner offers a declaration of facts that are offered as further proof that her daughter lied at trial (PageID 2026). In deciding this case, the Court is limited to the record that was before the Ohio courts. *Cullen v. Pinholster,* 563 U.S. 170 (2011). *Pinholster* bars a federal court "from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis." *Upshaw v. Stephenson*, 97 F. 4th 365, 372 (6th Cir. 2024), quoting *Mitchell v. Genovese*, 974 F.3d 638, 647 (6th Cir. 2020).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 29, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.